Reuben D. Nathan, Esq. (SBN 208436)
**NATHAN & ASSOCIATES, APC**
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

Ross Cornell, Esq. (SBN 210413)
**LAW OFFICES OF ROSS CORNELL, APC**
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

Attorneys for Plaintiff, SALEEM ERAKAT

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALEEM ERAKAT, on behalf of himself and all similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>AXIOS MEDIA INC., a Delaware corporation,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>1) Cal. Penal Code § 631<br>2) 18 U.S.C. § 2511(1)(a)<br>3) Cal. Bus. & Prof. Code § 17200, *et seq.*<br>4) Cal. Constitution Art. I § 1<br>5) Intrusion Upon Seclusion<br>6) Unjust Enrichment |

1

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Plaintiff SALEEM ERAKAT ("Plaintiff") files this class action complaint on behalf of himself and all others similarly situated (the "Class Members") against Defendant AXIOS MEDIA INC., a Delaware corporation ("Defendant" or "Axios"). Plaintiff brings this action based upon personal knowledge of the facts pertaining to himself, and on information and belief as to all others, by and through the investigation of undersigned counsel.

## I.      NATURE OF THE ACTION

1.      This is a class action lawsuit brought on behalf of all California residents who have accessed and used www.axios.com (the "Website"), a website that Defendant provides for public access and use.

2.      During his use of the Website, Plaintiff navigated to multiple pages on the Website, unaware that Defendant was causing and permitting Third Parties to intercept the content of his communications and reveal his personal private interests.

3.      Defendant caused the interception of the contents of Plaintiff's communications with the Website, including the page URLs identifying what he was browsing and/or the referrer URLs reflecting prior navigation, which were transmitted to the Third Parties during the page-load process itself.

4.      As set forth in the Specific Allegations section of this Complaint below, Defendant surreptitiously embeds and operates third-party tracking technologies on the Website that intercept the contents of users' electronic communications in real time and without notice or consent. The intercepted contents include not only the full URLs of the pages users view (including URLs whose paths and query strings themselves disclose what users are reading or searching for), but also the titles of those pages as plain-text parameters, the search queries users type into the Website, content classifications and sentiment analyses generated by the Trackers' natural-language processing of the article content, and content keywords extracted from the pages users read. The Trackers receive these contents alongside persistent cross-session identifiers that link each interception to the user's behavioral profile across multiple sessions, devices, and websites. Defendant

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

intentionally deploys these technologies to accomplish its commercial objectives, including identity resolution, cross-session behavioral profiling, audience segmentation, and the monetization of users' browsing activity through targeted advertising and real-time bidding.

5.      Defendant deploys these interception technologies in violation of the California Invasion of Privacy Act, Cal. Penal Code § 631, and the Federal Wiretap Act, 18 U.S.C. § 2511(1)(a). Defendant has done so from prior to the beginning of the class period in this case and continuously through to today and ongoingly.

## II.      GENERAL ALLEGATIONS

6.      A pixel tracker, also known as a web beacon, is a tracking mechanism embedded in a website that monitors user interactions. It typically appears as a small, transparent 1x1 image or a lightweight JavaScript snippet that activates when a webpage is loaded, or a user performs a tracked action.

7.      When triggered, the pixel causes the user's browser to transmit data to third-party servers, including the contents of the user's communications with the Website such as page URLs identifying what the user is browsing, referrer URLs reflecting prior navigation, session-level identifiers, and browser and device characteristics.

8.      When users visit the Website, Defendant causes tracking technologies to be embedded in visitors' browsers. These include, but are not limited to, the following:

- The Google Analytics Tracker
- The Google Ads / DoubleClick Tracker
- The Segment Tracker
- The Permutive Tracker

9.      The third parties who operate the above-listed trackers use the intercepted contents of users' communications collected via the Website for their own independent purposes tied to broader advertising ecosystems, profiling, and data monetization strategies, which go beyond Defendant's direct needs, for their own financial gain. The above-listed trackers are referred to herein collectively as the "Trackers" and their

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

operators below are referred to collectively as the "Third Parties."

10. The Trackers are operated by distinct third parties, including Google LLC (as to the Google Analytics tracker and the Google Ads / DoubleClick conversion tracker), Twilio Inc. (as to the Segment analytics tracker), and Permutive Inc. (as to the Permutive audience-data tracker) (collectively, the "Third Parties"). Defendant knowingly embeds and deploys the Trackers on the Website to facilitate the third parties' interception of the contents of users' electronic communications.

11. The third-party tracking code executed contemporaneously with each page load and navigation event initiated by Plaintiff's browser. As the browser initiated each HTTP request to retrieve Website content, embedded scripts automatically caused the interception and transmission of the contents of users' communications with the Website to remote third-party endpoints during the page-load process itself, before the requested page finished rendering and without any user interaction or authorization.

12. Plaintiff and the Class Members did not consent to the installation, execution, embedding, or injection of the Trackers on their devices and did not consent to the contents of their communications with the Website being intercepted by third parties. The Website did not display any consent banner, pop-up, cookie notice, or other authorization mechanism requesting permission before deploying the Trackers to intercept user communications. Defendant did not obtain express prior consent for the interception and transmission of the contents of users' communications for advertising, analytics, or monetization purposes.

13. Generalized references herein to users, visitors and consumers expressly include Plaintiff and the Class Members.

### III. PARTIES

14. Plaintiff SALEEM ERAKAT is a California citizen residing in Contra Costa County, CA and has an intent to remain there. Plaintiff was in California when he visited the Website, which occurred during the class period including but not limited to on March 30, 2026. The allegations set forth herein are based on the Website as

configured when Plaintiff visited it.

15.     AXIOS MEDIA INC. is a Delaware corporation that owns, operates, and controls the Website, an online news and commentary platform through which Axios publishes daily news, business and political reporting, technology coverage, and local-edition reporting for readers nationwide.

16.     Axios Media Inc. publishes Axios, a digital news organization providing original reporting, smart-brevity newsletters, podcasts, and local newsroom coverage of national and regional events. Defendant maintains its principal offices in Arlington, Virginia. Through its Website and related digital platforms, Axios serves readers in California and throughout the United States.

17.     Axios conducts media and publishing business nationwide and engages in editorial production, marketing, and commercial operations centered on its digital news platform. Defendant's business activities include operating the Website, through which readers browse news articles, political analysis, business reporting, technology coverage, and local newsroom content covering current events and public policy.

18.     The Website, including the mobile site, serves as a core component of Axios's digital presence. The Website provides users with access to news articles, political analysis, business and technology reporting, local edition content, and opinion essays, and functions as the primary reader-facing content channel through which California users access Axios's editorial content.

## IV.   JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff asserts a claim arising under federal law, specifically 18 U.S.C. § 2520, which provides a civil cause of action for violations of 18 U.S.C. § 2511(1)(a) of the Federal Wiretap Act.

20.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to the federal claim that they form part of the same case or controversy under Article III of the United States

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

Constitution.

21.    This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000, exclusive of interest and costs, there are over 100 members of the proposed Class, and at least one Class Member is a citizen of a State different from Defendant's state of citizenship, satisfying CAFA's minimal-diversity requirement.

22.    This Court has personal jurisdiction over Defendant pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), which authorizes the Court to exercise personal jurisdiction over a defendant subject to the jurisdiction of a court of general jurisdiction in California, and California's long-arm statute, Cal. Code Civ. Proc. § 410.10, which authorizes the exercise of personal jurisdiction to the full extent permitted by the Due Process Clause of the United States Constitution.

23.    Defendant is subject to specific personal jurisdiction in this forum because (a) Defendant purposefully directed at California and California residents the data-collection, tracking, and marketing conduct giving rise to Plaintiff's claims, and (b) Plaintiff's claims arise out of and relate to that California-directed conduct. The exercise of personal jurisdiction over Defendant in this forum comports with due process and traditional notions of fair play and substantial justice.

24.    Defendant operates a substantial editorial and commercial business in and directed at California. On information and belief, Defendant publishes a portfolio of California-targeted "local" editorial editions and newsletters under its Axios brand, including Axios San Francisco and Axios San Diego.  Each of its California editions is staffed by locally based reporters and editors, focuses on California-specific local news and issues, and is monetized through Axios Local sponsorships and other advertising products directed at California audiences.

25.    Defendant uses the Website as the primary digital channel through which those California editorial products are delivered to California readers, and the Website's local content path is the same content path on which one of the sensitive URLs giving

6

rise to Plaintiff's claims was published. Defendant's operation of the Website with respect to California is integrated with its California editorial operations and is used by Defendant with the specific intention to reach California readers in California.

26. In furtherance of its California-targeted operations, Defendant entered into and maintains commercial partnerships with California-headquartered data, analytics, and advertising-technology companies, including Google LLC (which operates the Google Analytics tracker and the Google Ads / DoubleClick conversion tracker), headquartered in Mountain View, California; Twilio Inc. (which operates the Segment tracker), headquartered in San Francisco, California; and, on information and belief, additional California-headquartered programmatic-advertising counterparties whose servers and exchanges fire on each page load of the Website. Through those partnerships, Defendant embedded the Trackers into the Website to cause California users' browsers, while located in California, to transmit California users' communications to California-based data infrastructure and servers operated by California-headquartered companies.

27. Plaintiff's claims arise from a continuing course of California-located conduct by Defendant, in which Defendant's deployment of the Trackers caused the contemporaneous interception, transmission, and disclosure of Plaintiff's communications and identifying information across multiple sessions, with the resulting data assembled into a persistent cross-platform profile of Plaintiff and California Class Members. The conduct giving rise to this action consists not of any single transmission in isolation, but of the cumulative interception and exploitation of Plaintiff's California-based browsing activity over time.

28. Defendant has made an express, ongoing, and deliberate choice to integrate the Website with the Trackers for the purpose of identifying, profiling, marketing to, and monetizing the Website's users, including the substantial portion of those users that Defendant knows actually or constructively to be California residents. The deployment of the Trackers on the Website is the work of Defendant, made by Defendant's own choice and configuration; it is not a passive incident of operating a website, and it is not

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

a contact attributable to the Trackers' operators. It is a central instrumentality of Defendant's strategy to commercially exploit the California consumer market through the Website.

29.    Plaintiff is a California resident, residing in Contra Costa County, California, with an intent to remain there. On the occasions giving rise to this action, Plaintiff accessed the Website from within California and engaged in browsing activity, including conducting an on-site search for the term "Lgbtq" on the Website's search interface, viewing the search-results page returned by that search, and reading articles in the Website's local and national editions concerning sexual orientation and same-sex marriage.

30.    During each of those California-located sessions, Defendant caused Plaintiff's browser, while located in California, to transmit the substantive contents of Plaintiff's communications with the Website to the Third Parties operating the Trackers, including the full URLs of the pages Plaintiff viewed (including URLs whose paths and query strings themselves disclosed the substance of what Plaintiff was reading or searching for), the titles of those pages as named payload parameters, the search query Plaintiff typed into the Website as a named payload parameter, content classifications generated from the article content by the Trackers' natural-language processing, and persistent cross-session identifiers transmitted as named payload parameters. Those transmissions occurred contemporaneously with Plaintiff's California-located use of the Website and are the conduct out of which Plaintiff's claims arise.

31.    As configured by Defendant, the transmissions described above occurred automatically during page loads and navigation, in real time and contemporaneously with Plaintiff's and other California users' communications with the Website. The transmissions to the operators of the Trackers included referrer headers identifying the prior pages Plaintiff had viewed on the Website, session-level and persistent identifiers, timestamps and event-sequencing data, browser and device characteristics, plaintext substantive content extracted from the pages Plaintiff and other California users viewed

(including page titles, search query strings, full URL paths, and content classifications), and identity-linked persistent identifiers transmitted as named payload parameters. None of those transmissions was preceded by notice to or consent from Plaintiff or any California Class Member.

32. The injury Plaintiff and Class Members suffer is not confined to any single intercepted transmission. The Trackers, operating in concert as a coordinated tracking architecture, capture and transmit the contents of Plaintiff's and Class Members' communications, together with persistent identifiers, across multiple sessions, and the Third Parties combine those transmissions into persistent cross-platform user profiles capable of identifying or re-identifying Plaintiff and Class Members across sessions, devices, and contexts. The harm at issue is the cumulative and ongoing interception, profiling, and commercial exploitation of Plaintiff's and Class Members' communications and identifying information, including the loss of anonymity, ongoing surveillance, and the commodification of the resulting behavioral dossier. This harm bears a close relationship to harms historically actionable at common law, including unauthorized wiretapping, eavesdropping, and intrusion upon seclusion.

33. Defendant's Privacy Policy states and claims that, when users visit the Website, Defendant collects identifiers that relate to users and their devices (including IP address and Device ID), information about how users interact with the Services and the advertising on the Services (including cookie data), non-precise geolocation data, and inferences derived from that information; and that cookies, pixel tags, and other online trackers are used by Defendant to capture this information.

34. Defendant's Privacy Policy further admits and confirms that information collected through the Website is shared with third parties, including analytics technology providers and advertising service providers who help deliver and provide relevant third-party ads. The Privacy Policy admits that those ad-targeting and ad-measurement processes operate through targeted advertising, cross-contextual behavioral advertising, or interest-based advertising delivered both on the Website and on other websites and

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

platforms.

35. The Privacy Policy further admits that, in California and other jurisdictions, "the use of online tracking technologies for advertising can be considered a 'sale' or 'sharing' of personal information." The Privacy Policy further admits that, although Defendant does not itself use sensitive personal information for profiling, "Axios can't control how third party advertising services may collect or use [user] information, including information that may be considered 'sensitive' under certain U.S. state privacy laws."

36. Defendant's Privacy Policy identifies California as one of the 'Covered Jurisdictions' whose residents have additional privacy rights, and explains that Axios will honor those rights for residents of Covered Jurisdictions. It also describes a 'Your Privacy Choices' link in the website footer that allows users to toggle off 'data sales and sharing' and block advertising trackers from 'firing' while on the site. These disclosures reflect Defendant's acknowledgment that California residents are among the users whose data is collected and used through the tracking and advertising practices described in the Privacy Policy; Plaintiff cites these statements not to base jurisdiction solely on statutory compliance, but as Defendant's own description of its engagement with users in California and other Covered Jurisdictions.

37. The conduct giving rise to Plaintiff's claims did not occur fortuitously, randomly, or as a result of passive Internet activity. It arose from Defendant's intentional and deliberate configuration of the Website to deploy the Trackers and to cause California users' browsers, while located in California, to transmit the substantive contents of California users' communications, together with persistent cross-session identifiers, to the Third Parties for use in Defendant's California-targeted commercial activities. Defendant thus deliberately reached out beyond its home state by knowingly installing tracking software onto unsuspecting Californians' devices so that it could later use and monetize the data it obtained, in a manner that was neither random, isolated, nor fortuitous.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

38.    Defendant thus purposefully directed its data-collection, tracking, and marketing conduct toward California and California residents, including Plaintiff. That conduct represents Defendant's own deliberate engagement with the California market for commercial gain, and not merely the consequence of California users' independent decisions to access the Website. Plaintiff's claims arise out of and relate to that California-directed conduct, specifically: the contemporaneous interception, transmission, and disclosure of Plaintiff's communications and identifying information to the operators of the Trackers during Plaintiff's California-located sessions on March 30, 2026. The exercise of specific personal jurisdiction over Defendant in this forum is therefore proper and consistent with due process.

39.    The exercise of specific personal jurisdiction over Defendant in this forum is also reasonable. California has a strong interest in adjudicating wiretapping, eavesdropping, and privacy-intrusion claims against entities that intentionally collect and commercially exploit the data of California residents. Plaintiff has a strong interest in convenient and effective relief in his home forum. Defendant has substantial commercial, editorial, and digital presence in California, and ongoing California-anchored data-and-advertising counterparty relationships, sufficient to defend this action without unfair burden. And the interstate judicial system's interest in efficient resolution, and the shared interest of states in furthering substantive social policies, are best served by adjudicating in California the claims arising from California-directed conduct affecting California residents.

40.    Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391(b) because (1) Defendant regularly transacts business in this District, operates the Website that serves millions of California residents, and is subject to personal jurisdiction here; (2) a substantial part of the events or omissions giving rise to the claims occurred within this District, as Plaintiff and other Class Members browsed the Website from within this District; (3) Plaintiff resides in this District; and (4) Defendant derives substantial revenue from California customers in this District.

## V.   FEDERAL AND STATE PRIVACY LAWS

### 1.   The California Invasion of Privacy Act (CIPA)

41.   The California Invasion of Privacy Act (CIPA) is a legislative measure designed to safeguard the privacy rights of California residents by prohibiting unauthorized wiretapping and eavesdropping on private communications. The California Legislature recognized the significant threat posed by emerging surveillance technologies, stating that "the development of new devices and techniques for the purpose of eavesdropping upon private communications ... has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society" (Cal. Penal Code § 630).

42.   Despite predating the Internet, CIPA has been applied to email and other Internet communications so long as that application is consistent with the statutory text and purpose. Section 631(a) reaches the interception of email content and online communications and consent under CIPA must be obtained before the interception occurs.

43.   CIPA's text and history confirm that the Legislature intended to protect core privacy rights, as reflected in § 630's declaration that the statute was enacted to protect the right of privacy of the people of this state. CIPA codifies a substantive right to privacy such that the violations of CIPA alleged herein constitute concrete injuries sufficient to establish Article III standing.

44.   Individuals may pursue legal action against violators of Cal. Penal Code § 631 and are entitled to seek $5,000 in statutory penalties per violation. Cal. Penal Code § 637.2(a)(1).

### 2.   The Federal Wiretap Act

45.   The Federal Wiretap Act, enacted as Title III of the Omnibus Crime Control and Safe Streets Act of 1968 and amended by the Electronic Communications Privacy Act (ECPA) of 1986, prohibits the intentional interception of wire, oral, or electronic communications. Congress enacted the statute to safeguard the privacy of

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

communications against unauthorized interception, recognizing that unchecked surveillance technology poses a fundamental threat to individual liberty.

46. The Federal Wiretap Act applies to communications transmitted over the Internet. The 1986 ECPA amendments expressly extended the statute's protections to electronic communications as defined under 18 U.S.C. § 2510(12) to include "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce." That includes data transmitted over the internet such as the contents of web browsing activity via HTTP requests as alleged here.

47. A person whose electronic communications are intercepted in violation of 18 U.S.C. § 2511 may bring a civil action pursuant to 18 U.S.C. § 2520(a). Available relief includes the greater of actual damages or statutory damages of $100 per day for each day of violation or $10,000, whichever is greater, plus punitive damages in appropriate cases, reasonable attorney's fees, and other litigation costs reasonably incurred.

## VI.   SPECIFIC ALLEGATIONS

48. During his use of the Website, Plaintiff navigated to the following pages, unaware that Defendant was causing and permitting Third Parties to intercept the content of his communications:

- https://www.axios.com/results?q=Lgbtq&sort=1;
- https://www.axios.com/local/nashville/2026/03/03/tennessee-republicans-lgbt-restrictions-marriage; and
- https://www.axios.com/2025/11/10/supreme-court-rejects-same-sex-marriage-challenge.

49. The Trackers operated on the Website during Plaintiff's visits to the URLs identified above and intercepted the substantive contents of his communications with the Website. Beyond the URLs, each Tracker receives, during each of those page loads, the

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

titles of the pages Plaintiff viewed transmitted in plaintext as named payload parameters (including "Search results for Lgbtq | Axios," "Tennessee Republicans target same-sex marriage, LGBTQ+ job protections," and "Supreme Court rejects challenge to gay marriage decision"). The Segment Tracker additionally receives the search query Plaintiff typed into the Website ("Lgbtq") transmitted as a separate named parameter. The Permutive Tracker additionally receives content classifications and sentiment values generated by its natural-language processing of the article text, including classifications such as "/society/sex" and "/society/social institution/marriage" with an associated negative-sentiment value. Each of those fields communicates the substance, purport, or meaning of what Plaintiff was reading or searching for on the Website, and is therefore content of Plaintiff's electronic communications within the meaning of Cal. Penal Code § 631(a) and 18 U.S.C. § 2510(8). Each Tracker section below illustrates what occurs during live browser access to those pages.

### 1.    *The Google Analytics Tracker*

50.    Defendant embedded and deployed a Google Analytics 4 tracking beacon on the Website, operated by Google LLC through its Google Analytics platform. The Google Analytics tracker monitors website visitor activity, transmits the full URL of each page a visitor views along with the page title and content metadata to Google's data collection servers at google-analytics.com, and simultaneously links browsing activity to persistent identifiers stored on the visitor's browser. Google LLC operates one of the largest data analytics and advertising platforms in the world, using intercepted browsing data for audience measurement, behavioral profiling, personalized advertising, and cross-site user tracking.

51.    Figure 1 is a Fiddler Classic raw request capture showing a POST request transmitted to Google's data collection servers at google-analytics.com. The request transmits Axios's registered Google Analytics 4 measurement ID (G-L57KHWNV81), the full URL of the LGBTQ search results page in the dl= parameter, a persistent client identifier in the cid= parameter, and a personalized tracking flag (npa=0) confirming that

14

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

no opt-out was applied, establishing that the search URL and tracking configuration appeared together in the same outbound request.

**Figure 1**



52.     Figure 2 is a Chrome DevTools Application panel capture showing the browser's cookie storage for https://www.axios.com. The Cookies panel for the .axios.com domain shows persistent first-party cookies stored during the visit to the LGBTQ search results page, including the Google Analytics _ga cookie and Axios's GA4-property-keyed _ga_L57KHWNV81 cookie, both with multi-year expirations extending into 2027. The panel also shows additional first-party cookies storing other Trackers' persistent identifiers, including ajs_anonymous_id and permutive-id, demonstrating that the persistent identifiers transmitted in the trackers' outbound requests correspond to identifier values stored on the browser as first-party cookies on the .axios.com domain.

/ / /

/ / /

15

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 2**



53.    Google's servers returned a 204 No Content response to the Google Analytics tracking request, confirming that Google received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website.

54.    Google LLC and its operators used the intercepted browsing data, including the URLs identifying Plaintiff's browsing activity concerning sexual orientation and LGBTQ-related content, for audience measurement, behavioral profiling, personalized advertising, and cross-site user tracking through persistent browser-linked identifiers. Axios explicitly configured Google Analytics for personalized tracking, as confirmed by the npa=0 parameter in the transmitted data. This commercial use of intercepted content is precisely what the Google Analytics platform is designed and marketed to accomplish.

55.    Google LLC is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant aided and abetted Google LLC's interception by embedding and configuring the Google Analytics tracker on the Website. By causing Google LLC to intercept the contents of Plaintiff's electronic

16

communications with the Website in this manner, Defendant violated Cal. Penal Code § 631 and 18 U.S.C. § 2511(1)(a).

## 2. *The Google Ads / DoubleClick Tracker*

56. Defendant embedded and deployed a Google Ads conversion-tracking pixel on the Website, operated by Google LLC through its Google Ads and DoubleClick advertising platforms. The Google Ads tracker fires automatically on each page load and transmits the full URL of the visited page, the page title, screen dimensions, and a persistent advertising identifier to Google's advertising servers at googleads.g.doubleclick.net. Google LLC uses the intercepted browsing data to associate Axios users with Google's cross-site advertising profiles, drive ad targeting, and supply real-time bidding signals to advertisers participating in Google's ad exchanges.

57. Figure 3 is a Fiddler Classic raw request capture showing a GET request transmitted to Google's DoubleClick servers at googleads.g.doubleclick.net/pagead/viewthroughconversion/542408756/. The request transmits Axios's registered Google Ads conversion-tracker ID (542408756), the full URL of the Tennessee article reporting on state legislation restricting same-sex marriage and LGBTQ+ employment protections in the url= parameter, the article's full title ("Tennessee Republicans target same-sex marriage, LGBTQ+ job protections - Axios Nashville") transmitted in plaintext as the tiba= parameter, a persistent advertising identifier in the auid= parameter, and a personalized tracking flag (npa=0) confirming that no opt-out was applied, establishing that the article URL, the article title, and the persistent advertising identifier appeared together in the same outbound request. The response panel shows an HTTP 200 OK status confirming successful real-time receipt by Google's DoubleClick servers.

/ / /

/ / /

17

**Figure 3**



58.    Google's servers at googleads.g.doubleclick.net returned an HTTP 200 OK response to the Google Ads conversion-tracking request, confirming that Google received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website.

59.    Google LLC and its operators used the intercepted browsing data, including the URLs identifying Plaintiff's browsing activity concerning sexual orientation and LGBTQ-related content, to build behavioral and audience profiles, generate ad-targeting signals, and supply real-time bidding cues to advertisers participating in Google's display, video, and search advertising networks. Axios explicitly configured the Google Ads conversion tracker for personalized targeting, as confirmed by the npa=0 parameter in the transmitted data. This commercial use of intercepted content is precisely what the Google Ads conversion-tracking pixel is designed and marketed to accomplish.

60.    Google LLC is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant aided and abetted Google LLC's interception by embedding and configuring the Google Ads conversion-tracking pixel

on the Website. By causing Google LLC to intercept the contents of Plaintiff's electronic communications with the Website in this manner, Defendant violated Cal. Penal Code § 631 and 18 U.S.C. § 2511(1)(a).

**3.      *The Segment Tracker***

61.      Defendant embedded and deployed a Segment analytics SDK on the Website, operated by Twilio Inc. through its Segment customer-data infrastructure platform. The Segment tracker fires automatically on each page load and transmits the full URL of the visited page, the page title, the on-site search query (where applicable), the page category, and a persistent anonymous user identifier to Segment's analytics servers at api.segment.io, where Segment routes the data to subscribed downstream destinations and stores it for later analysis.

62.      Figure 4 is a Fiddler Classic raw request capture showing a POST request transmitted to Segment's servers at api.segment.io/v1/p. The JSON request body transmits the full URL of the LGBTQ search results page in the properties.url and context.page.url fields, the on-site search query (?q=Lgbtq&sort=1) in the properties.search field, the page title in the context.page.title field, and a persistent anonymous user identifier in the anonymousId field, establishing that the search URL, search query, page title, and persistent identifier appeared together in the same outbound request. The response panel shows an HTTP 200 OK status with the body {"success": true}, confirming successful real-time receipt by Segment's servers.

/ / /

/ / /

/ / /

19

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 4**



63.    Segment's servers at api.segment.io returned an HTTP 200 OK response to the page-tracking request with the body {"success": true}, confirming that Segment received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website.

64.    Figure 5 is a Fiddler Classic raw request capture showing a POST request transmitted to Segment's servers at api.segment.io/v1/p during the same browsing session, on a different sensitive page on the Website. The JSON request body transmits the full URL of the article reporting on the Supreme Court's rejection of a challenge to same-sex marriage in the properties.url and context.page.url fields, the article's full title ("Supreme Court rejects challenge to gay marriage decision") in the context.page.title field, and a persistent anonymous user identifier in the anonymousId field, establishing that the article URL, the article title, and the persistent identifier appeared together in the same outbound request. The userId field is null, confirming that this transmission occurred without any logged-in user account. The response panel shows an HTTP 200 OK status with the body {"success": true}, confirming successful real-time receipt by Segment's servers.

///

**Figure 5**



65.    Twilio Inc. and its operators used the intercepted content of Plaintiff's communications with the Website concerning sexual orientation and LGBTQ-related content, including the page URLs, the page titles, and the search query Plaintiff typed into the Website's search interface (each transmitted to Segment as a separate named field), to build cross-session behavioral profiles tied to the persistent anonymousId identifier and to link Plaintiff's browsing activity across multiple sensitive pages of the Website to a single such profile. Twilio routed the intercepted content to Axios's downstream advertising and analytics destinations and supplied Axios's marketing and ad-targeting workflows with audience-segmentation signals derived from that content. This commercial use of intercepted content is precisely what the Segment customer-data platform is designed and marketed to accomplish.

66.    Twilio Inc. is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant aided and abetted Twilio Inc.'s interception by embedding and configuring the Segment analytics SDK on the Website. By causing Twilio Inc. to intercept the contents of Plaintiff's electronic communications

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

with the Website in this manner, Defendant violated Cal. Penal Code § 631 and 18 U.S.C. § 2511(1)(a).

### 4.   *The Permutive Tracker*

67.   Defendant embedded and deployed the Permutive audience-data SDK on the Website, operated by Permutive Inc. through its real-time audience-data platform. The Permutive tracker fires automatically on each page load and transmits the full URL of the visited page, the page title, content classifications, and a persistent user identifier together with a session identifier to Permutive's audience-data servers at api.permutive.com, where Permutive constructs and updates real-time behavioral profiles and supplies audience-segment signals to Axios's advertising and content-personalization workflows.

68.   Figure 6 is a Fiddler Classic raw request capture showing a POST request transmitted to Permutive's servers at api.permutive.com/cloud-lift/v2/lift. The JSON request body transmits the full URL of the Tennessee article reporting on state legislation restricting same-sex marriage and LGBTQ+ employment protections in the url field, the article's full title ("Tennessee Republicans target same-sex marriage, LGBTQ+ job protections - Axios") in the title field, and Axios's registered Permutive workspace key (k=2054d492-9a2a-40ef-a757-304aec8c2ab0) as a request parameter. The body further transmits content-classification labels, named entities, content keywords, and a sentiment value, each generated by Permutive's natural-language processing of the article text and including entries corresponding to the article's same-sex marriage and LGBTQ subject matter. The request originates from Origin: https://www.axios.com. The response panel shows an HTTP 200 OK status, confirming successful real-time receipt by Permutive's servers.

/ / /

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 6**



69.    Figure 7 is a Chrome DevTools Application panel capture showing the browser's Local Storage for https://www.axios.com. The Local Storage panel shows persistent identifiers and recent-activity values stored during the visit to the LGBTQ search results page, including permutive-id (Permutive's persistent user identifier), permutive-app, permutive-session, ajs_anonymous_id (Segment's persistent identifier), li_adsId, and AXIOS_RECENT_SEARCH_TERMS containing the value "lgbtq", demonstrating that Axios's first-party JavaScript stores both the user's recent search terms and the trackers' persistent identifiers in the browser's local storage, where they are read on each subsequent page load and supplied to the trackers' outbound requests.

/ / /

/ / /

/ / /

23

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

**Figure 7**



70. Permutive's servers at api.permutive.com returned an HTTP 200 OK response to the audience-data request, confirming that Permutive received and processed the transmitted data in real time, during the transmission of Plaintiff's communications with the Website.

71. Permutive Inc. and its operators used the intercepted content of Plaintiff's communications with the Website concerning sexual orientation and LGBTQ-related content, including the page URLs, the page titles, the search query Plaintiff typed into the Website's search interface, content-classification labels generated by Permutive's natural-language processing of the article text (such as "/society/sex" and "/society/social institution/marriage"), named entities and content keywords extracted from the article text (including "Same-sex marriage," "Mary Bonauto," and "GLBTQ Legal Advocates & Defenders"), and sentiment values (each transmitted to Permutive as a separate named field), to build real-time behavioral and audience-segment profiles tied to the persistent permutive-id identifier and to link Plaintiff's browsing activity across multiple sensitive pages of the Website to a single such profile. Permutive supplied audience-targeting signals derived from that content to Axios's advertising operations and enabled cross-session profiling and audience activation across

24

Permutive's customer base. This commercial use of intercepted content is precisely what the Permutive audience-data platform is designed and marketed to accomplish.

72.     Permutive Inc. is not a party to the communications between Plaintiff and the Website; it is a third-party interceptor that surreptitiously duplicated and captured those communications as they occurred. Defendant aided and abetted Permutive Inc.'s interception by embedding and configuring the Permutive SDK on the Website. By causing Permutive Inc. to intercept the contents of Plaintiff's electronic communications with the Website in this manner, Defendant violated Cal. Penal Code § 631 and 18 U.S.C. § 2511(1)(a).

## VII.   CLASS ALLEGATIONS

73.     Plaintiff brings this action individually and on behalf of all others similarly situated (the "Class" or "Class Members") defined as follows:

> All persons within California whose electronic communications with the Website, including the URL contents of their HTTP requests to the Website were intercepted by one or more Trackers between March 30, 2025 and the present.

74.     NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not more. The exact identities of Class Members can be ascertained by the records maintained by Defendant.

75.     COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions include but are not limited to:

- Whether Defendant configured the Website to transmit the URL contents of visitors' HTTP requests to the Trackers;

- Whether the URL contents of those requests constitute "contents" of electronic communications within the meaning of Cal. Penal Code § 631(a) and 18 U.S.C. § 2510(8);

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

- Whether Defendant's conduct constitutes interception of electronic communications in violation of Cal. Penal Code § 631(a);
- Whether Defendant's conduct constitutes intentional interception of electronic communications in violation of 18 U.S.C. § 2511(1)(a);
- Whether Defendant's conduct constitutes an unlawful or unfair business practice under Cal. Bus. & Prof. Code § 17200;
- Whether Plaintiff and Class Members are entitled to statutory damages;
- Whether Class Members are entitled to injunctive relief;
- Whether the Defendant's conduct violates the California Constitution;
- Whether the Defendant's conduct constitutes an intrusion upon seclusion;
- Whether Class Members are entitled to disgorgement of data unlawfully obtained; and
- Whether Class Members are entitled to restitution.

76. TYPICALITY: As a person who visited the Website and whose URL contents were intercepted by the Trackers, Plaintiff is asserting claims that are typical of the Class Members. Plaintiff's experience with the Trackers is typical to Class Members.

77. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the Class or whose inclusion would otherwise be improper are excluded.

78. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of all Class Members is impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed. Individualized litigation also presents a potential for inconsistent or contradictory judgments.

/ / /

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## VIII.  <u>FIRST CAUSE OF ACTION</u>

### Violations of Cal. Penal Code § 631

### By Plaintiff and the Class Members Against All Defendants

79.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

80.    Plaintiff brings this cause of action on behalf of himself and the Class.

81.    California Penal Code § 631(a) prohibits any person from willfully and without the consent of all parties to the communication reading, or attempting to read, or learning the contents or meaning of any message, report, or communication while the same is in transit, and from using or attempting to use, in any manner or for any purpose, any information so obtained.

82.    The full URLs of Plaintiff's and Class members' HTTP requests to the Website constitute the "contents" of those communications within the meaning of § 631(a). As described in the preceding tracker-specific allegations, the Trackers received human readable copies of URL strings in the same HTTP request or response in which the Website servers received it, while that communication was in transit between Plaintiff's browser and the Website.

83.    Defendant intentionally configured its website to transmit Plaintiff's and Class members' URL contents to the Trackers, itself received and used those URL contents for audience segmentation and ad targeting, and permitted the Trackers to use that information for user profiling and targeted advertising. The Trackers are third parties to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to interception of the contents of their communications by any Tracker, and no other exception to § 631(a) applies.

84.    Each interception constitutes a separate violation of § 631(a). Plaintiff and the Class are entitled to recover the greater of actual damages or $5,000 per violation pursuant to Cal. Penal Code § 637.2(a)(1), injunctive relief, and such other relief as the Court deems just and proper.

27

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## IX.    SECOND CAUSE OF ACTION

### Violations of 18 U.S.C. § 2511(1)(a)

### By Plaintiff and the Class Members Against All Defendants

85.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

86.    Plaintiff brings this cause of action on behalf of himself and the Class.

87.    18 U.S.C. § 2511(1)(a) prohibits any person from intentionally intercepting any wire, oral, or electronic communication. The Federal Wiretap Act defines "contents" to include any information concerning the substance, purport, or meaning of a communication. 18 U.S.C. § 2510(8).

88.    The full URLs of Plaintiff's and Class members' HTTP requests to the Website are "contents" of electronic communications within the meaning of 18 U.S.C. § 2510(8). Those URLs communicate the substance and meaning of Plaintiff's and Class members' browsing. As described in the preceding tracker-specific allegations, the Trackers intercepted URL contents in real time, in the same HTTP request or response in which the Website's servers received them, while those communications were in transit.

89.    Defendant intentionally configured its website to transmit Plaintiff's and Class members' URL contents to each Tracker, itself received and used those URL contents for audience segmentation and ad targeting, and permitted each Tracker to use that information for user profiling and targeted advertising. The Trackers are third parties to the communications between Plaintiff and the Website. Plaintiff and Class members did not consent to this interception, and no other exception applies.

90.    Plaintiff and the Class are entitled to relief under 18 U.S.C. § 2520, including the greater of actual damages plus any profits made by Defendant through the interception, or statutory damages of $100 per day per violation or $10,000, whichever is greater, together with punitive damages, reasonable attorney's fees, and litigation costs.

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## X.    THIRD CAUSE OF ACTION

### Violations of Business & Professions Code § 17200

### By Plaintiff and the Class Members Against All Defendants

91.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

92.    Plaintiff brings this cause of action on behalf of himself and the Class.

93.    California Business and Professions Code § 17200 prohibits any unlawful, unfair, or fraudulent business act or practice. Defendant's conduct constitutes both an unlawful and an unfair business practice.

94.    Defendant's conduct is unlawful. By facilitating the interception of the contents of Plaintiff's and Class members' electronic communications without consent, Defendant violated California Penal Code § 631(a) and 18 U.S.C. § 2511(1)(a). Each statutory violation constitutes a predicate unlawful business act or practice under § 17200.

95.    Defendant's conduct is also unfair. Defendant covertly transmitted Plaintiff's and Class members' URL contents to third-party Trackers for commercial monetization without disclosure, authorization, or compensation. The harm to Plaintiff and the Class including but not limited to the interception and commercial exploitation of sensitive personal information and the financial value thereof is substantial, is not outweighed by any legitimate countervailing benefit, and could not reasonably have been avoided by Plaintiff or Class members.

96.    Plaintiff and Class members suffered injury in fact and lost money or property as a result of Defendant's conduct. Browsing data identifying the specific content a user views, including browsing URLs of the kind intercepted here, has recognized and quantifiable economic value in the digital advertising marketplace. Each Tracker enabled by Defendant used that intercepted URL content to build behavioral profiles and to participate in real-time bidding auctions in which advertisers pay measurable clearing prices for access to audiences identified by precisely this kind of

29

browsing activity.

97.    Plaintiff and Class members provided their browsing data as implicit consideration for access to the Website, a data-for-services exchange that was not disclosed and to which they did not consent. Defendant and the Trackers are designed to and on information and belief did capture the economic benefit of that exchange, in the form of advertising revenue and RTB clearing prices generated by the Trackers' use of users' intercepted URL data, without compensating Plaintiff or Class members. Plaintiff and Class members were thereby deprived of the economic value of their data and of the full value of a privacy-protective browsing experience they reasonably expected and would have bargained for had the exchange been disclosed.

98.    Plaintiff and the Class are entitled to injunctive relief prohibiting Defendant from continuing its unlawful and unfair practices, restitution of monies acquired by Defendant through those practices, and reasonable attorney's fees pursuant to California Code of Civil Procedure § 1021.5.

## XI.    FOURTH CAUSE OF ACTION

### Violation of the California Constitution, Article I, Section 1

### By Plaintiff and the Class Members Against All Defendants

99.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

100.    Plaintiff brings this cause of action on behalf of himself and the Class.

101.    Article I, Section 1 of the California Constitution provides that privacy is among the inalienable rights of all people in California. To state a claim for violation of the constitutional right to privacy, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

102.    Plaintiff and Class Members have a legally protected privacy interest in the contents of their electronic communications with the Website, including the specific page URLs reflecting their browsing activity. California law recognizes a legally

30

protected privacy interest in personal browsing activity, particularly when that activity is covertly intercepted by commercial third parties for advertising and profiling purposes without disclosure or consent.

103. Plaintiff and Class Members had a reasonable expectation of privacy in the contents of their electronic communications with the Website. A reasonable person visiting an online news and commentary website does not expect that the specific pages they browse, including pages reflecting personal beliefs, identities, and sensitive social and political interests, will be covertly transmitted to multiple separate third-party commercial tracking companies in real time, linked to persistent cross-session user profiles, and used for advertising targeting, behavioral analytics, and commercial monetization.

104. Defendant's conduct constitutes a serious invasion of that privacy. By deliberately embedding and configuring four third-party tracking technologies on the Website, Defendant caused the real-time, covert interception of the URL contents of Plaintiff's and Class Members' electronic communications and their transmission to Google LLC, Twilio Inc., and Permutive Inc., where they were linked to persistent cross-session profiles and used for commercial advertising and analytics purposes without Plaintiff's knowledge or consent. The severity of the invasion is heightened by the nature of the online news and commentary website, the sensitivity of the content browsed, the persistent and cross-platform nature of the identifiers used, and the commercial exploitation of the intercepted data.

105. As a result of Defendant's invasion of their privacy, Plaintiff and Class Members have suffered harm, including loss of privacy, loss of control over their personal information, and the unauthorized commercial exploitation of their browsing activity. Plaintiff and the Class seek injunctive relief, nominal damages, and all other relief authorized by law.

///

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

## XII.    FIFTH CAUSE OF ACTION

### Intrusion Upon Seclusion

### By Plaintiff and the Class Members Against All Defendants

106.    Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

107.    Plaintiff brings this cause of action on behalf of himself and the Class.

108.    The common law tort of intrusion upon seclusion requires: (1) an intentional intrusion, physically or otherwise, into a place, conversation, or matter in which the plaintiff has a reasonable expectation of privacy; and (2) that the intrusion would be highly offensive to a reasonable person.

109.    Defendant intentionally intruded into Plaintiff's and Class Members' electronic communications with the Website by deliberately embedding four third-party tracking technologies that intercepted the URL contents of those communications in real time and transmitted them to Google LLC, Twilio Inc., and Permutive Inc. without Plaintiff's knowledge or consent. Plaintiff had a reasonable expectation of privacy in the contents of those communications.

110.    The intrusion is highly offensive to a reasonable person. Defendant covertly deployed tracking technologies that captured the specific content Plaintiff was browsing on an online news and commentary website, including pages reflecting personal beliefs, identities, and sensitive social and political interests and transmitted it to multiple third-party commercial entities for advertising targeting and behavioral profiling. The covert and non-consensual nature of the interception, the nature of the Website and the sensitivity of the content browsed, including pages reflecting personal beliefs, identities, and sensitive social and political interests, the commercial exploitation of the intercepted browsing activity for advertising and data analytics purposes, and the use of persistent cross-session identifiers to build comprehensive user profiles without disclosure all render the intrusion highly offensive to a reasonable person.

/ / /

32

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

111. As a result of Defendant's intrusion upon their seclusion, Plaintiff and Class Members have suffered harm, including loss of privacy, emotional distress, and the unauthorized exploitation of their personal information. Plaintiff and the Class seek compensatory damages, nominal damages, injunctive relief, and all other appropriate relief.

## XIII. SIXTH CAUSE OF ACTION

### Unjust Enrichment

### By Plaintiff and the Class Members Against All Defendants

112. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

113. Plaintiff brings this cause of action on behalf of himself and the Class.

114. Unjust enrichment requires: (1) a benefit conferred on the defendant; (2) at the expense of the plaintiff; and (3) circumstances that make it inequitable for the defendant to retain the benefit without compensating the plaintiff.

115. Defendant received a benefit by permitting Google LLC, Twilio Inc., and Permutive Inc. to deploy their tracking technologies on the Website. In exchange for allowing these third parties to intercept and collect the URL contents of visitors' communications with the Website, Defendant received monetary compensation, data licensing benefits, promotional support, or other commercial value. Defendant's arrangement with these tracking operators enabled it to offer analytics, retargeting, and advertising services that generated commercial revenue and business value.

116. Defendant received this benefit at Plaintiff's and Class Members' expense. Plaintiff's and Class Members' browsing data constitutes personal property with recognized economic value in the digital advertising marketplace. By intercepting the URL contents of Plaintiff's communications and transmitting them to third-party trackers, Defendant and its tracking partners extracted the commercial value of that data without compensation. Plaintiff and Class Members also suffered the loss of control over their personal information, which has recognized economic value as a privacy-protective

33

property interest.

117.   It is inequitable for Defendant to retain the benefits of its data-for-services arrangement without compensating Plaintiff and Class Members whose browsing activity was the source of that commercial value. Defendant's concealment of the tracking arrangement and its failure to obtain Plaintiff's and Class Members' informed consent render retention of those benefits unjust.

118.   Plaintiff and the Class seek restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense.

## XIV.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff prays for the following:

1. An order certifying the Class, naming Plaintiff as Class representative, and naming Plaintiff's attorneys as Class counsel;

2. An order declaring that Defendant's conduct violates Cal. Penal Code § 631(a), 18 U.S.C. § 2511(1)(a), Cal. Bus. & Prof. Code § 17200, et seq., Article I, Section 1 of the California Constitution, and the common law prohibition against intrusion upon seclusion;

3. An order enjoining Defendant from continuing the conduct alleged herein;

4. Statutory damages pursuant to Cal. Penal Code § 637.2(a)(1) of $5,000 per violation;

5. Statutory damages pursuant to 18 U.S.C. § 2520 of the greater of actual damages plus any profits made by Defendant through the violation, or $100 per day per violation or $10,000, whichever is greater;

6. Punitive damages pursuant to 18 U.S.C. § 2520;

7. Restitution pursuant to Cal. Bus. & Prof. Code § 17200, et seq.;

8. Nominal damages and injunctive relief for violation of Article I, Section 1 of the California Constitution;

9. Compensatory and nominal damages for intrusion upon seclusion;

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

10. Restitution and disgorgement of all amounts by which Defendant was unjustly enriched at Plaintiff's and Class Members' expense;

11. Prejudgment interest;

12. Reasonable attorney's fees and costs; and

13. Such other and further relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all causes of action and issues so triable.

Respectfully submitted,

Dated:   May 8, 2026

**LAW OFFICES OF ROSS CORNELL, APC**

By: */s/ Ross C. Cornell*
Ross Cornell, Esq. (SBN 210413)
P.O. Box 1989 #305
Big Bear Lake, CA 92315
Office: (562) 612-1708
Email: rc@rosscornelllaw.com

**NATHAN & ASSOCIATES, APC**
Reuben D. Nathan
2901 W. Coast Hwy., Suite 200
Newport Beach, CA 92663
Office: (949) 270-2798
Email: rnathan@nathanlawpractice.com

*Attorneys for Plaintiff and the Putative Class*

35

CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED